**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CAROL WILDMAN,**

                               **Plaintiff,**

                    v.                            1:05-CV-899
                                                      (FJS/DRH)
**VERIZON CORPORATION, NICHOL HALL,**
**SANDY SHIVAS, JOY RICHARDSON, and**
**JUDY SHELDON, Individually,**

                               **Defendants.**
_____

**APPEARANCES**                             **OF COUNSEL**

**OFFICE OF PAUL F. DWYER**             **PAUL F. DWYER, ESQ.**
350 Northern Boulevard, Suite 102
Albany, New York 12204
Attorneys for Plaintiff

**PAUL, HASTINGS, JANOFSKY**         **ALLAN S. BLOOM, ESQ.**
**& WALKER LLP**
75 East 55th Street
New York, New York, 10022
Attorneys for Defendants[1]

**SCULLIN, Senior Judge**

---

[1] The Court dismissed Defendant Sandy Shivas by Stipulation and Order dated January 31, 2006.

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff filed her complaint on July 19, 2005,[2] asserting various causes of action against her employer Defendant Verizon and her managers and superiors, Defendants Hall, Shivas, Richardson, and Sheldon, under the Americans with Disabilities Act ("ADA") and the New York Human Rights Law ("NYHRL"), including the following: failure to accommodate, employment discrimination, hostile work environment, and pattern-and-practice discrimination. Currently before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims.

**II. BACKGROUND**

From 1997 to the present, Plaintiff worked as a Customer Service Representative in Defendant Verizon's Saratoga Springs Call Center. Since August 2002, Plaintiff has suffered from back problems, and her physician requested an ergonomic evaluation. Shortly after September 13, 2002, Plaintiff went on disability leave.

Plaintiff returned to work on April 7, 2003, working half-days under doctor's orders. In July 2003, Defendant Verizon ordered an ergonomic chair and a hydraulic sit/stand station ("ergonomic equipment") for Plaintiff. On July 17, 2003, Plaintiff suffered a back injury at work. The next day, Plaintiff went on disability leave until April 19, 2004. The ergonomic equipment arrived in October and December of 2003.

During her employment, Plaintiff was a member of the International Brotherhood of

---

[2] Plaintiff received her right-to-sue notice from the EEOC on April 20, 2005.

Electrical Workers, Local 2213 ("Union").  After a dispute regarding Plaintiff's capacity to work full days, the Union sought a third medical opinion.  On June 30, 2004, Dr. J. Ernest Mincy examined Plaintiff and opined that Plaintiff could only work five hours per day.  Plaintiff did not appeal this opinion.

After receiving Dr. Mincy's opinion, Defendant Verizon reclassified Plaintiff from a full-time to a part-time employee.  From November 2, 2005, until the filing of Defendants' motion, Plaintiff has been out of work on disability leave based on mental and emotional distress.

### III.  DISCUSSION

**A.     Preliminary matters**

In her memorandum of law, Plaintiff concedes that the evidence fails as a matter of law to establish any intentional discrimination claim other than her failure-to-accommodate claim and her harassment and hostile work environment claim.  She also concedes that her claims for pattern-and-practice discrimination and claims against Defendants Hall, Richardson and Sheldon fail.  Accordingly, Plaintiff has abandoned these claims; and the Court grants Defendants' motion for summary judgment with respect to these claims.  Thus, the only remaining claims are Plaintiff's failure-to-accommodate claim and her hostile work environment claim against Defendant Verizon.

**B.     Plaintiff's failure-to-accommodate claim**

Under the ADA and the NYHRL, to establish a *prima facie* case of failure-to-accommodate disability discrimination, a plaintiff must demonstrate that "1) [s]he was an

'individual who has a disability' within the meaning of the statute; 2) the employer had notice of [her] disability; 3) [s]he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 331 & n.1 (2d Cir. 2000) (discriminatory discharge case) (citation omitted).

In addition, in a failure-to-timely-accommodate case, the plaintiff must prove that the defendant's delay "was 'motivated by discriminatory intent[;]'" evidence that the delay was unreasonable can show such intent. *Manessis v. N.Y. City Dep't of Transp.*, No. 02 Civ. 359(SAS), 2003 WL 289969, *17 (S.D.N.Y. Feb. 10, 2003).[3] In this case, the parties dispute whether Defendant Verizon's alleged delay in providing the ergonomic equipment was reasonable.

Defendant Verizon has produced evidence to show that the approximately four-month delay was reasonable given the changes in personnel who were handing the measuring and ordering process and insurance providers as well as Plaintiff's multiple extended disability leaves from work without predictable durations.[4] Plaintiff has presented no evidence, beyond the

---

[3] Where an employer provides an interim reasonable accommodation, its delay in providing accommodation is not a failure to accommodate. *See Ungerleider v. Fleet Mortgage Group of Fleet Bank*, 329 F. Supp. 2d 343, 354-55 (D. Conn. 2004) (finding no failure to accommodate where the defendant provided the accommodation of a home office during the process of finding a desktop PC) (footnote omitted).

[4] Plaintiff's doctor requested an ergonomic evaluation of Plaintiff in August of 2002; Plaintiff returned to work the next month and was measured for the ergonomic equipment on September 13, 2002. She went out on disability leave shortly thereafter. Plaintiff returned to work on April 7, 2003, and worked half-days per doctor's orders through July 17, 2003, at which time, she went out on disability leave. Plaintiff returned to work on April 19, 2004, and worked through November 2, 2005. Plaintiff's ergonomic equipment arrived in October of 2003 and

(continued...)

delay itself, to the contrary. Therefore, the Court finds that Plaintiff has failed to raise a genuine issue of material fact that Defendant Verizon's delay in obtaining the ergonomic equipment was unreasonable.

Plaintiff has also failed to present any other evidence that discriminatory animus caused Defendant Verizon's delay. Plaintiff has alleged that Defendant Verizon's employees told her that Defendant Verizon had ordered the equipment in the Fall of 2002, which, in fact, it had not done. However, Plaintiff has not shown that Defendant Verizon's employees reported to her anything other than what they knew or had been told about Plaintiff's equipment. Furthermore, Plaintiff has not presented any evidence, direct or circumstantial, that Defendant Verizon's employees had a discriminatory motive for providing her with incorrect information.

Moreover, Plaintiff makes a conclusory assertion that Defendant Verizon's employees did not think she was disabled and that Defendant Verizon or its employees did not want to pay for the equipment out of the budget. *See* Transcript of Plaintiff's Deposition, dated March 3 and 13, 2006, ("Plaintiff's Deposition") at 281-82. Plaintiff, however, offers no evidence to support this conclusory assertion. Defendant Verizon's possibly negligent oversight that led to the delay

---

⁴(...continued)
December of 2003. For purposes of calculating the delay, the Court only counts the time when Plaintiff was working without the accommodation. *See Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir. 1998) (considering only the time when the plaintiff worked without the accommodation because the plaintiff's medical leave was not due to the lack of equipment). Accordingly, the total delay is approximately four months (0.5 months in September of 2002 and 3.5 months in 2003).

Moreover, Plaintiff's own neurosurgeon testified that the requested ergonomic equipment was only to make Plaintiff more comfortable and not to prevent future injury and that the delay did not cause or exacerbate Plaintiff's condition. *See* Deposition of Fred Patrick Scialabba, M.D., dated June 7, 2006, at 97-101. Accordingly, the delay in providing the equipment did not cause Plaintiff's medical leave.

is regrettable and not to be encouraged; however, in the absence of any evidence beyond Plaintiff's conclusory allegations, the Court finds that there is nothing in the record to indicate that discriminatory intent was behind the delay. Therefore, the Court grants Defendant Verizon summary judgment with respect to Plaintiff's failure-to-accommodate claims.[5]

### C.      Plaintiff's hostile work environment claim

#### *1. Prima facie case*

A hostile work environment claim exists where sufficiently severe or pervasive discriminatory conduct alters the conditions of employment and creates an abusive work environment. *See Ferraro v. Kellwood Co.*, 440 F.3d 96, 100 (2d Cir. 2006) (quotation and other citation omitted). "To establish a claim of hostile work environment harassment under the ADA or the NYSHRL, a plaintiff must demonstrate that: (1) she is disabled under the statute; (2) she was the subject of harassment; (3) the harassment was based on her disability; and (4) the harassment affected a term, condition or privilege of her employment." *Pomilio v. Wachtell Lipton Rosen & Katz*, No. 97 Civ. 2230, 1999 WL 9843, *5 (S.D.N.Y. Jan. 11, 1999) (noting

---

[5] In her memorandum of law, Plaintiff also alleges that the ergonomic equipment that Defendant provided was the wrong size. In Plaintiff's deposition testimony, she asserts that the sit/stand station was too low for her height. *See* Plaintiff's Deposition at 270. Plaintiff, however, presented no evidence as to why the sizing was incorrect and whether or not the problems with size were unreasonable. "Once a reasonable accommodation has been made, a defendant has fulfilled its obligation to make an accommodation." *Kemer v. Johnson*, 900 F. Supp. 677, 686 (S.D.N.Y. 1995) (citations omitted). Here, Defendant Verizon provided an ergonomic chair and sit/stand station for Plaintiff; and Plaintiff has offered no evidence, other than one conclusory statement, that the accommodation that Defendant provided was unreasonable. Accordingly, the Court finds that one conclusory allegation that the sit/stand station was too low for her height, without more, is insufficient to create a genuine issue of material fact as to whether Defendant Verizon provided a reasonable accommodation.

that the test for hostile work environment harassment under Title VII applies to claims under the ADA) (citing *Ragusa v. Teachers Ins. & Annuity Ass'n-College Retirement Equities Fund, Inc.*, No. 96 Civ. 3127(JSM), 1998 WL 483461, at *4 (S.D.N.Y. Aug. 17, 1998); *Hendler* [*v. Intelecom USA, Inc.*], 963 F. Supp. [200,] 207-09 [(E.D.N.Y. 1997)]).  "To establish the fourth element of a hostile work environment harassment claim, a plaintiff must prove that the workplace was 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive . . . .'" *Pomilio*, 1999 WL 9843, at *6 (quotation and other citation omitted).

In support of her harassment claim, Plaintiff cites comments by Jeff Brooks, Plaintiff's first level manager, such as "Hurry up, gimpy" and variations approximately two times per month.  *See* Plaintiff's Deposition at 21-22, 27-28.  Plaintiff noted that, although she found this comment offensive; "[h]e wasn't doing it to be mean.  He thought he was being funny."  *See id*. at 28.  Plaintiff also mentioned that Mr. Brooks picked up a blanket she used for lumbar support in her chair and told her, "I'm sick of picking up your blanket," that he put cardboard on her chair ostensibly to keep the blanket in place, and that he stated that there was nothing wrong with her.  *See id*. at 38-39, 60.  Plaintiff also mentioned a comment by Defendant Hall, when Defendant Hall and Defendant Richardson were taking Plaintiff and two other employees out to lunch less than a block from their office, offering to drive her to lunch if she was unable to walk.  *See id*. at 30-33.  Plaintiff mentions that Defendant Sheldon was short with her on the phone regarding the status of her ergonomic equipment.  *See id*. at 36.  Plaintiff also cites comments by non-supervisory co-workers that she "wobbled" when she walked, that she was a "part-timer," and one comment that people usually trip going down stairs when Plaintiff tripped going up stairs.

*See id.* at 57-59. Additionally, in her opposition affidavit, Plaintiff asserts that other people made "gimpy" comments, that she received dirty looks and that she was made to work during an office party. *See* Affidavit of Carol Wildman, dated December 4, 2006, ("Plaintiff's Affidavit in Opposition"), ¶¶ 30-31, 34.[6]

Plaintiff's claims of harassment fall into the category of simple teasing and a few isolated incidents, which are not sufficient to establish discrimination. *See Pomilio*, 1999 WL 9843, at *6 ("'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious)' are not enough to establish discrimination." (quotation and other citation omitted)); *see also Miller v. Taco Bell Corp.*, 204 F. Supp. 2d 456, 465 (E.D.N.Y. 2002) (rejecting periodic teasing as not meeting the required showing of "more than sporadic, offensive behavior" (citations omitted)). Therefore, the Court concludes that Plaintiff's asserted harassment, even if proven, would fail to state a *prima facie* case for a hostile work environment claim because the evidence is insufficient to demonstrate a workplace permeated with intimidation and ridicule. Accordingly, the Court grants Defendant Verizon's motion for summary judgment on this claim.

### 2. *Farragher/Ellerth defense*

Defendant Verizon asserts that, even if Plaintiff were able to establish a *prima facie* case of hostile work environment harassment, it would nonetheless be entitled to summary judgment based on the *Faragher/Ellerth* defense. *See Faragher v. City of Boca Raton*, 524 U.S. 775

---

[6] Defendant Verizon challenges this evidence and asks the Court to disregard it as conflicting with Plaintiff's prior deposition testimony. The Court will consider the evidence without having to decide whether or not it should be credited because, even considering the new evidence, Defendant is entitled to summary judgment.

(1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)*; see also Ferraro*, 440 F.3d at 101 (applying defense to disability discrimination claims under the NYHRL and New York City Human Rights Law claims) (citations omitted); *Lennon v. New York City*, 392 F. Supp. 2d 630, 640 (S.D.N.Y. 2005) (applying defense to Title VII, NYSHRL, ADEA and ADA claims (citations omtited)).

This defense is available "only if one of two . . . elements is met: either (1) the employee's supervisor took no 'tangible employment action,' which involves an official company act, against the employee; or (2) any tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment." *Ferraro*, 440 F.3d at 101 (citing *Faragher*, 524 U.S. at 808, 118 S. Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S. Ct. 2257).[7] Since Plaintiff does not assert that any of her supervisors took a tangible employment action against her,[8] the Court finds that Defendant Verizon may make recourse to the *Faragher/Ellerth* affirmative defense.

This defense has two elements: "(1) 'the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior,' and (2) 'the plaintiff employee

---

[7] "'Tangible employment action' refers to 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 n.1 (2d Cir. 2001) (quoting *Burlington*, 524 U.S. at 761, 118 S. Ct. 2257).

[8] In her complaint, Plaintiff alleges that the reclassification to part-time arguably resulted in a change in benefits. The undisputed facts, however, show that Plaintiff's reclassification to part-time was not discriminatory, but rather the result of the operation of the collective bargaining agreement, her union's decision to solicit a third medical opinion, and that opinion. Additionally, Plaintiff did not lose any vacation pay or weekly pay, nor did she receive undesired shift start times, lose the ability to change departments, or lose any medial benefits. Moreover, she remained eligible for a bonus. Plaintiff has not put forth any facts to the contrary and has conceded that she does not have a discrimination claim based on an adverse employment action.

unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Id.* (quoting *Faragher*, 524 U.S. at 807, 118 S. Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S. Ct. 2257). "An employer may demonstrate the exercise of reasonable care . . . by showing the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not dispositive." *Id.* at 102 (citations omitted). "[U]nder the second element, proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden." *Id.* (citing *Faragher*, 524 U.S. at 807, 118 S. Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S. Ct. 2257).

During the period at issue, it is undisputed that Defendant Verizon had an antiharassment policy that included a procedure for employees to complain about discrimination and harassment. Plaintiff does not dispute the reasonableness of Defendant Verizon's policy or its complaint procedures. Therefore, the Court finds that Defendant Verizon has satisfied the first element of the *Faragher/Ellerth* affirmative defense.

As to the second element, Plaintiff acknowledges that she did not complain about the harassment; however, she contends that her failure to do so was reasonable because she believed that Defendant Verizon "shuffled [other complaints] under the rug." *See* Plaintiff's Deposition at 28. In addition, in her affidavit, Plaintiff, for the first time, asserts a fear of retaliation. *See* Plaintiff's Affidavit in Opposition at ¶ 34. However, Plaintiff has come forward with no evidence to support her subjective beliefs and fears. "Such conclusory assertions fail as a matter of law to constitute sufficient evidence to establish that [Plaintiff's beliefs or fear of retaliation] was 'credible' – that 'her complaint would not be taken seriously or that she would suffer some adverse employment action.'" *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir. 2001)

(quoting *Caridad*, 191 F.3d at 295). "A credible fear must be based on more than the employee's subjective belief. Evidence must be produced to the effect that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints." *Id.*

In light of Plaintiff's failure to produce any evidence to justify her failure to use Defendant Verizon's complaint procedure, Defendant Verizon has met its burden of proving the second element of the *Faragher/Ellerth* defense. Accordingly, the Court holds that Defendant Verizon is entitled to summary judgment with respect to Plaintiff's hostile work environment claim on this alternative ground as well.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment for Defendants and close this case.

**IT IS SO ORDERED.**

Dated: January 14, 2009
         Syracuse, New York

　　　　　　　　　　　　　　　　　　　　／s／ Frederick J. Scullin, Jr.
Frederick J. Scullin, Jr.
Senior United States District Court Judge